UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**GIORGI SHENGELIA,**

    *Petitioner*,

v.   Case No. 5:25-CV-1545-JKP

**SYLVESTER M. ORTEGA, et al.,**

    *Respondents*.

### ORDER GRANTING
### PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is a Petition for Writ of Habeas Corpus (ECF No. 1) filed pursuant to 28 U.S.C. § 2241. Respondents (often referred to as "the Government") have filed a response (ECF No. 6) and Petitioner has filed a reply (ECF No. 7). The petition is ready for ruling. After reviewing the briefing, provided evidence, and applicable law, the Court grants the petition.

### I. BACKGROUND

Petitioner, a native and citizen of Georgia, entered the United States on October 12, 2023, and was immediately detained. On May 6, 2024, an immigration judge ("IJ") denied his request for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") and ordered him removed to Georgia. An appeal resulted in the Board of Immigration Appeals ("BIA") affirming the denial of asylum but remanded for determination of Petitioner's eligibility for withholding of removal under the Immigration and Nationality Act ("INA").

On September 19, 2024, an IJ again denied Petitioner asylum but granted him a withholding of removal to Georgia. As a result, while he may not be removed to Georgia, 8 U.S.C. § 1231(b)(3), he can be removed to a third country. *Johnson v. Guzman Chavez*, 594 U.S. 523, 531–32 (2021). That order of the IJ became administratively final on April 21, 2025. Thus, Petitioner

has been continuously detained for more than two years, and nearly eight months after the IJ order granting him withholding of removal became final.

On November 20, 2025, Petitioner filed the instant petition for writ of habeas corpus in which he asserts that his detention violates 8 U.S.C. § 1231(a)(6) and other provisions of the INA as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). He further asserts claims under the Fifth Amendment and for violation of 8 C.F.R. § 241.4.

On December 5, 2025, the Government filed its response to the petition. It argues that (1) Petitioner's detention is lawful under § 1231(a)(6) and (2) Petitioner has not shown any good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. In reply, Petitioner contests the Government's arguments.

## II. LEGAL STANDARD

Habeas petitioners must show they are "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, ___ F. Supp. 3d ___, ___, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (quoting 28 U.S.C. § 2241(c)(3)). They "bear[] the burden of proving that [they are] being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy [this] burden of proof by a preponderance of the evidence." *Id*. (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) and citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). Courts "considering a habeas petition must 'determine the facts and dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

## III. ANALYSIS[1]

Petitioner primarily argues that he is entitled to relief because his detention is illegal under

---

[1] In its analysis of the facts, issues, and arguments presented in this case, the Court notes close similarity to that presented in many recent Petitions for Writ of Habeas Corpus filed in the Western District of Texas, and specifically,

*Zadvydas v. Davis*, 533 U.S. 678 (2001) in that his removal is not reasonably foreseeable. Respondents argue that Petitioner's detention is lawful under 8 U.S.C. § 1231(a)(6) and that Petitioner does not satisfy the requirements for release under *Zadvydas*.

**A. Detention and Reasonable Foreseeability**

"When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90–day statutory 'removal period,' during which time the alien normally is held in custody." *Zadvydas*, 533 U.S. at 682; *accord* 8 U.S.C. § 1231(a)(1). Subject to exceptions within § 1231, subsection (a)(1) mandates that the Government remove the noncitizen during this initial 90-day removal period.

The removal period commences on the latest of three dates, two of which are limited to specific circumstances. *See* 8 U.S.C. § 1231(a)(1)(B); 8 C.F.R. § 241.4(g)(1)(i). For example, the date of a reviewing court's final order may provide the latest date when "the removal order is judicially reviewed and if a court orders a stay of the removal." *See* 8 U.S.C. § 1231(a)(1)(B)(ii). Or the date the noncitizen "is released from detention or confinement" may provide the latest date when the noncitizen "is detained or confined (except under an immigration process)." *Id*. § 1231(a)(1)(B)(iii). If neither of those circumstances provide the latest date, then the period commences on the "date the order of removal becomes administratively final." *Id*. § 1231(a)(1)(B)(i).

The statute, however, also provides for an extension of the initial 90-day period in some circumstances. *Id*. § 1231(a)(1)(C). More specifically:

> The removal period shall be extended beyond a period of 90 days and the alien may

---

the San Antonio Division. The Court finds the reasoning in these similar cases persuasive and finds the ultimate determination based upon this reasoning correct. For that reason, and for the sake of expediency, the Court follows these opinions closely. *See, e.g., Puertas-Mendoza v. Bondi*, Case No. 5:25-CV-0890-XR, 2025 WL 3142089 (W.D. Tex. Oct. 22, 2025); *Villanueva v. Tate*, ___ F. Supp. 3d ___, ___, No. CV H-25-3364, 2025 WL 2774610 (S.D. Tex. Sept. 26, 2025).

remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

*Id*.; *accord* 8 C.F.R. § 241.4(g)(1)(ii). Furthermore, certain noncitizens "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6). Subsection (a)(6) applies to noncitizens who are (i) inadmissible under 8 U.S.C. § 1182, (ii) "removable as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy"; or (iii) have been determined "to be a risk to the community or unlikely to comply with the order of removal." *Zadvydas*, 533 U.S. at 682 (cleaned up).

While § 1231(a) provides authority in some situations to detain a noncitizen beyond the 90-day removal period for as long as is "reasonably necessary to secure removal," the Supreme Court concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699. Furthermore, the Supreme Court recognized that six months is a "presumptively reasonable period of detention." *Id*. at 701. This six-month period includes the 90-day removal period. *See id*.; *Zavvar v. Scott*, No. CV 25-2104-TDC, 2025 WL 2592543, at *5–6 (D. Md. Sept. 8, 2025) ("Where the *Zadvydas* Court referenced the 90-day statutory removal period in its discussion of the six-month period, it is clear that the six months includes the original 90-day period of detention, plus an additional 90 days."). "But the Supreme Court has held that a noncitizen may not, consistent with the Due Process Clause, be detained indefinitely." *Villanueva v. Tate*, ___ F. Supp. 3d ___, ___, No. CV H-25-3364, 2025 WL 2774610, at *2 (S.D. Tex. Sept. 26, 2025) (citing *Zadvydas*, 533 U.S. at 697).

**B. Application**

In this case, there is no question that Petitioner has been detained longer than the

4

presumptively reasonable six-month period recognized in *Zadvydas*. Unlike *Villanueva* and *Puertas-Mendoza*, there is no issue of prematurity or whether Petitioner has been subject to detention for longer than the presumptively reasonable period. The presumption of reasonableness no longer applies.

To make out a *Zadvydas* claim after the six months have run, a detained noncitizen need only "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. If they do so, "the Government must respond with evidence sufficient to rebut that showing." *Id*.

Through the circumstances of his detention and the undisputed facts, Petitioner has satisfied the requirements of *Zadvydas*. The circumstances provide good reason to believe that there is no significant likelihood of his removal in the foreseeable future. It is undisputed that an IJ granted Petitioner a withholding of removal under 8 U.S.C.§ 1231(b)(3)(A), thereby providing him protection under CAT and precluding removal to his country of origin, Georgia. The grant of such a withholding of removal "substantially increases the difficulty of removing him." *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 398 (D.N.J. 2025). The Government has undertaken third-country inquiries for months now and has produced no acceptances, travel documents, timelines, or scheduled removal. While it has received refusals from France and Uganda, inquiries to Canada, Armenia, Azerbaijan, and Turkey remain pending without response.

Unless the Government returns "to the immigration court to seek an order lifting the order for a withhold of removal," it cannot remove Petitioner to Georgia. *See Villanueva*, 2025 WL 2774610, at *10 (citing 8 C.F.R. § 1208.24(f)). The Government has not initiated such proceedings, and its submitted declaration does not state that any such proceedings are anticipated. Further, the declaration demonstrates that, on September 29, 2025, ICE completed a 90-day post order

custody review ("POCR") and determined that Petitioner "would remain in custody because he ha[d] not established to ICE's satisfaction that he is not a significant flight risk or may abscond to avoid removal nor that he does not pose a danger to the community or U.S. security." As of the date of the Government's response, a 180-day POCR "is pending review." The declaration concludes that "[t]here is a significant likelihood of removal in the reasonably foreseeable future as ICE-ERO is actively working with its agency counterparts to secure third-country removal."

Additionally, "any efforts to remove [Petitioner] to a third country would likely be delayed by proceedings contesting his removal to the third country finally identified." *Villanueva*, 2025 WL 2774610, at *10. When a petitioner "likely will have the opportunity to seek further relief from the Immigration Court, and then potentially file appeals from any adverse rulings," the circumstances "further demonstrate[] that removal is not likely in the reasonably foreseeable future." *Zavvar*, 2025 WL 2592543, at *8. Even when ICE has "identified a third country," noncitizens like Petitioner "would be entitled to seek fear-based relief from removal to that country, which would require additional, lengthy proceedings." *Munoz-Saucedo*, 789 F. Supp. 3d at 399 (cleaned up).

These factors all impact the propriety of continued detention. The decision to grant a noncitizen a withholding of removal greatly impacts the reasonable foreseeability of removal even to a third country. And the Court finds that Petitioner has carried his burden to show good reason to believe that his removal to a third country is unlikely in the reasonably foreseeable future. The burden thus shifts to the Government to show that removal is likely in the foreseeable future. Through a submitted declaration, the Government submits that ICE is actively working with its agency counterparts to secure third country removal. Under the facts of this case, that declaration does not carry the Government's burden.

The Government relies on internal agency guidance regarding third country removal, which provides for the removal of noncitizens to any country that has provided diplomatic assurances that those removed will not be persecuted or tortured. And under such guidance no further procedures are necessary so long as the State Department has found the diplomatic representations credible. The Government argues that the internal guidance comports with all Constitutional requirements and requires rejection of any argument that a noncitizen is entitled to an individualized determination under the CAT regulations. But the Government also concedes that if removal to a third country is not covered by the adequate assurances, the noncitizen is provided an opportunity to establish any fears regarding removal to such a country.

In reply, Petitioner makes apparently solid arguments for why such internal guidance does not override the INA, its implementing regulations, or the United States Constitution. But the Court finds no need to make any definitive finding or conclusion regarding the internal guidance. Any further delay from any additional proceedings merely provides more reasons that support finding that Petitioner has carried his burden to show good reason to believe that his removal to a third country is unlikely in the reasonably foreseeable future. Similarly, such delay merely provides additional support for finding that the Government has not shown a significant likelihood of Petitioner's removal in the foreseeable future. Even if the Court disregards any such additional delay, the Government still has not carried its burden.

Furthermore, assuming without deciding that such internal guidance may be relevant to issues like those raised in this case, the Court finds that the reliance in this instance speculative and premature. The Government has not identified any country that has provided the requisite assurances. Nor has it identified any country that will accept Petitioner should he be removed. Any impact of such internal guidance appears speculative.

To the extent the Government faults Petitioner for failing to propose an acceptable third country, the Court agrees with Petitioner that neither § 1231 nor *Zadvydas* impose such a burden on the detainee. The relevant inquiry is whether the Government can effectuate removal in the reasonably foreseeable future. Requiring the Petitioner to identify an acceptable third country as a prerequisite for shifting the burden to the Government has no basis in law. And, in some circumstances, such a requirement could permit indefinite civil detention based on statelessness or geopolitical refusal, a result *Zadvydas* expressly forbids. *See* 533 U.S. at 689–91.

Further, as Petitioner points out, the Government does not argue that he has failed to cooperate within the meaning of 8 U.S.C. § 1231(a)(1)(C). Nor do the facts support any failure to cooperate. Thus, that statute provides no basis for further detention.

Although the Government mentions that the removal period is properly extended when the noncitizen presents a flight risk or other risk to the community, it makes no argument that Petitioner is a flight risk or is a danger to the community. Assuming without deciding that these considerations are relevant when removal is not reasonably foreseeable, the Court finds that the conclusory September 29, 2025 POCR determination regarding Petitioner's failure to adequately show that he is not a flight risk or a danger to the community is insufficient to justify further detention. Specific regulations require individualized consideration of concrete factors, and the Government has not shown that any factor supports finding Petitioner to be a flight risk or a danger to the community. A conclusory determination set out in a declaration is simply not enough.

Finally, the Government argues that the appropriate remedy for procedural due process violation is substitute process rather than immediate release from custody. But Petitioner challenges his continued detention, not simply any delayed review. Substitute process cannot make an unlawful detention lawful when the detention violates § 1231(a)(6) and *Zadvydas*. In the

circumstances here, the proper remedy is immediate release.

Under the circumstances of this case, the Court concludes that habeas relief is proper and *Zadvydas* requires Petitioner's release from his unlawful detention. The Court finds no need to address any claim or challenge not addressed herein. And, while Petitioner requests attorney fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A), the Fifth Circuit has held that recovery of attorney fees are not available in habeas corpus proceedings. *See Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023). The Court thus denies the request for fees.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Petition for Habeas Corpus (ECF No. 1). It is **ORDERED** that:

1. Respondents are **DIRECTED** to **RELEASE** Petitioner Giorgi Shengelia from custody, under appropriate conditions of release, to a public place no later than forty-eight hours after the issuance of this order.

2. Respondents must **NOTIFY** Petitioner's counsel of the exact location and exact time of his release as soon as practicable and no less than two hours before his release.

3. Any possible or anticipated removal or transfer of Petitioner under this present detention is **PROHIBITED**.

4. The parties shall **FILE** a Joint Status report no later than twenty-four hours after the Petitioner's release, confirming that Petitioner has been released.

A final judgment will be issued separately.

**IT IS SO ORDERED** this 16th day of December 2025 at 4:45 p.m.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE